## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTONIO STOVALL** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-1705** |
| **WARDEN LYNN COOPER** | **SECTION "N"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to Title 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* Title 28 U.S.C. § 2254(e)(2).[1]

## I.    Factual and Procedural Background

### A.    Factual Background[2]

The petitioner, Antonio Stovall ("Stovall"), is incarcerated in the Avoyelles Correctional Center, in Cottonport, Louisiana.[3]  In the instant federal habeas petition, Stovall challenges his 2006

---

[1]Under Title 28 U.S.C. § 2254(e)(2), the District Court may hold an Evidentiary Hearing only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by an exercise of due diligence, and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]The facts are adapted from the Louisiana Fourth Circuit  Court of Appeal's decision in *State v. Stovall*, 977 So.2d 1074, 1076-81 (La. App. 4th Cir. 2008).

[3]Rec. Doc. No. 2.

jury conviction for one count of armed robbery of victim, Carl Mack ("Mack"), in violation of La. R.S. 14:64.

On August 31, 2004 at approximately 10:30 p.m.,  Mack briefly stepped outside of his front door at 937 Marigny Street and saw three young men walking on the sidewalk from the river toward the lake.  The first man was petitioner, Antonio Stovall, who was wearing a green or dark blue parka. Petitioner raised his shirt, which was a signal that there might be trouble.  Mack stepped back inside. Through the shutters he saw that the three had walked past the iron gate leading to his residence. He waited inside behind the locked door for about a minute and then went out on the porch, but did not see the three men.  He went down the steps, opened the iron gate and stepped out on the street, where he saw Antonio Stovall sitting on his stoop leaning against the house.  Mack also saw the petitioner's younger brother, Anthony Stovall, who was crouched down in front of the stoop, and Dwight Love, who was behind Anthony.  Mack started running back up the steps of his residence; he lost his footing on the first step and banged his knee. As he ran up the steps, someone yelled that one of the three had a gun, and then  Mack saw the gun.

 Mack went up the steps and pulled at the door, which tended to stick in the summer. When he could not open the door, he felt a gun jabbed into his back as another young man started pulling on his shirt. One of the three pushed him, and he fell back off of the porch into the alley and broke his left leg.  One of the men, later identified as Anthony Stovall, held the gun to his head and told him to get up and open up his house.  Mack got up and attempted to take a step, but fell down again. One of the robbers put his hand over  Mack's mouth and told him to get up and open up his house. When he made another attempt, he fell again.  Mack then told them that he had broken his leg and

2

asked them to just take his money.  He pulled out his wallet and gave them all the money and put his wallet back into his pocket. The three then took off. Each of the three went through his gate and then ran up Marigny Street toward the lake.  Mack said that he dragged himself under a pier, and then the littlest of the three, Anthony, returned with the gun.  Mack said that Anthony looked down the alleyway, could not see anything, and ran off.  Mack was able to drag himself to the window of one of his tenants, Joseph Rier at 939 Marigny Street, who brought him inside and called 911.

Officer McGhee responded to the scene of the crime, obtained a description of the robbers from  Mack and had him transported to the hospital.  Between five to ten minutes later, another call was received from the dispatcher relating to three subjects trying to get underneath a house not far from the robbery location.  Officer McGhee responded to the 1100 block of Marigny Street.  Based upon the description of the robbers given by  Mack, Officer McGhee apprehended the three suspects as well as a black duffle bag containing a gun fitting the description of the one used in the robbery.  Officer McGhee then took the three suspects to Tulane Hospital for a "show-up" identification with the victim.

The victim, Mack, identified all three.  Upon reading the news report two weeks after the robbery,  Mack read the names of the suspects and realized that Antonio and Anthony Stovall had worked as tap dancers for his entertainment company when they were around 12 years old and had attended a couple of dance classes with him. He did not recognized them initially because he had not seen them in about four years.

The State of Louisiana filed a five-count bill of information on November 10, 2004, charging Antonio Stovall, Anthony Stovall and Dwight Love with a string of armed robberies.  On April 27,

2005, the State dismissed all charges except Count I, relating to the robbery of Mack, and proceeded to trial against Antonio Stovall.[4]  On November 14, 2006, after a one-day trial in Orleans Parish Criminal District Court, Antonio Stovall was convicted of one count of armed robbery.[5]  The trial court sentenced Stovall to a term of twenty-five (25) years without possibility of parole, probation or suspension of sentence.[6]

On July 20, 2007, Stovall appealed to the Louisiana Fourth Circuit Court of Appeal and the Court affirmed the conviction and sentence on February 6, 2008.[7]  Stovall then timely filed a writ of certiorari on or about February 15, 2008, seeking review of this decision by the Louisiana Supreme Court.[8]  The Louisiana Supreme Court summarily denied relief on September 26, 2008.[9] Stovall's conviction became final 90 days later, on Friday, December 26, 2008, because he did not file a writ application with the United States Supreme Court.[10]  *See Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[4]The two co-defendants subsequently pled guilty.

[5]State Rec. vol. 1 of 6, Docket Master entry dated 11/14/06.

[6]State Rec. vol. 1 of 6, Docket Master entry dated 01/10/07.

[7]*State v. Stovall*, 977 So. 2d 1074 (La. App. 4 Cir. 2008); State Rec. vol. 4 of 6, 4th Cir. Opinion, 2007-KA-0343. Stovall's claims on appeal were that the trial court erred in denying his motion to suppress identification, that his sentence was excessive, and included a request for review of errors patent.

[8]State Rec. vol. 5 of 6, Writ No. 08-KO-501.

[9]*State v. Stovall*, 992 So.2d 984 (La. 2008); State Rec. vol. 5 of 6, Louisiana Supreme Court Ruling in 2008-KO-0501.

[10]The ninetieth day of Stovall's filing period fell on Christmas Day, a federal holiday, thus his filing deadline was extended until the next business day.

4

**B**.    **Post-Conviction Relief**

On August 11, 2009, Stovall signed and dated an application for state post-conviction relief which he later claimed he filed with the district court.[11]  Therein, Stovall raised the following claims: 1) that his right to Equal Protection was denied when he was selected for retaliatory prosecution for not pleading guilty; 2) he received ineffective assistance of counsel due to counsel's failure to file a motion to suppress evidence of the weapon used in the robbery;  and, 3) he received ineffective assistance of counsel during trial when counsel failed to subject the prosecution's case to meaningful adversarial testing.  When no decision was forthcoming from the state district court, Stovall filed a writ of mandamus with the Louisiana Fourth Circuit Court of Appeal on December 7, 2010.[12]  The Louisiana Fourth Circuit reviewed and denied Stovall's claims *sua sponte* and denied the writ of mandamus on January 28, 2011.[13]

Stovall then applied for a supervisory and/or remedial writ on February 17, 2011 which was denied by the Louisiana Supreme Court on January 20, 2012.[14]

_____

[11]Neither the district court's record nor docket master indicate that Stovall's post-conviction application was ever filed.  However, Stovall subsequently filed a writ of mandamus in the Louisiana Fourth Circuit Court of Appeal in which he asserted that he filed a post-conviction application with the district court on August 11, 2009, a copy of which he attached to the writ of mandamus.  See State Rec. vol. 6 of 6, Application for Writ of Mandamus and attached Uniform Application for Post-Conviction Relief.  The Louisiana  Fourth Circuit Court of Appeal treated the application as if it had been filed in the district court.

[12]State Rec. vol. 6 of 6, Application for Writ of Mandamus

[13]State Rec. vol. 6 of 6, Louisiana Fourth Circuit Court of Appeal Ruling in 2011-K-0049.

[14]*State ex rel. Stovall v. State*, 78 So.3d 135 (La. 2012); State Rec. vol. 6 of 6, Louisiana Supreme Court Ruling in 2011-KH-0377.

C.   **Federal Petition**

On or about June 27, 2012, Stovall filed his federal habeas petition with this court.[15] Stovall's application for federal habeas corpus relief raised all of the grounds he had raised both on direct appeal and in state post-conviction proceedings.[16]

In its opposition, the State argues that Stovall's petition should be dismissed because it was not timely filed.[17]

II.   **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which comprehensively revised federal habeas corpus legislation, including Title 28 U.S.C. § 2254, went into effect on April 24, 1996[18] and applies to habeas petitions filed after that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). Stovall's federal petition is considered filed under the "mailbox rule" on June 27,

_____

[15]Stovall failed to sign his federal habeas application.  However, he signed and dated his accompanying application to proceed in forma pauperis on June 18, 2012 and his statement of account, signed by the authorized officer of the prison institution, was dated June 27, 2012, the earliest date it could have been tendered to the prison custodian for filing.  Likewise, the mailing envelope shows a post-mark date of June 27, 2012.  Rec. Doc. 2 at pp. 10-11; Fed. Doc. 2-2 at p. 48.

[16]Rec. Doc. 2 at pp. 12 and 18.

[17]Rec. Doc. No. 18; Response to Petition for Habeas Corpus Relief.

[18]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *See United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

2012.[19]  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000).

The AEDPA therefore applies to Stovall's petition.

### A.    **Statute of Limitations**

The AEDPA requires a petitioner to bring his Title 28 U.S.C. § 2254 claim within one year

of the date his conviction became final.[20]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).  The

record reflects that Stovall's conviction became final on Friday, December 26, 2008 when he failed

to seek review from the United States Supreme Court. Thus Stovall had until December 26, 2009

to timely file his federal habeas petition, but failed to file it until June 27, 2012.  Thus, literal

application of the statute of limitations would bar Stovall's Title 28 U.S.C. § 2254 petition as of

December 26, 2009, unless he is entitled to tolling.

---

[19]The Fifth Circuit has recognized that the "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 377).

[20]The statute of limitations provision of the AEDPA provides:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

| | |
|---|---|
| A. | the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; |
| B. | the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions; |
| C. | the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or |
| D. | the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. |

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. Title 28 U.S.C. § 2244(d).

B.    **Statutory Tolling**

Title 28 U.S.C. § 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* Title 28 U.S.C. § 2244(d)(2). In order for a State post-conviction application to be considered "properly filed" within the meaning of Title 28 U.S.C. § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Williams v. Cain*, 217 F.3d 303, 307 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).

A matter is "pending" for Title U.S.C. § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (A matter is "pending" for [Title 28 U.S.C.] Section 2244(d)(2) purposes until further appellate review is unavailable under the particular state's procedures.) (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

In this case, Stovall's one-year AEDPA filing period began to run on December 27, 2008, the first day after his conviction became final, and ran uninterrupted for 227 days, until he filed a state post-conviction application on August 11, 2009.[21] The limitations period was thus tolled while that application was properly pending in the state courts, or until the January 20, 2012 decision of the Louisiana Supreme Court denying post-conviction relief. See *Grillette v. Warden, Winn*

---

[21]Although there is no evidence of this filing, the court gives Stovall the benefit of the date he signed and dated the post-conviction application which he attached to his request for writ of mandamus with the state appellate court.

8

*Correctional Center*, 522 F.3d 765, 769 (5th Cir. 2004)(collateral review process is "in continuance" so long as one "full round of state habeas proceedings is properly in progress.") A "full round" of collateral review includes not only the state trial court's consideration but also the "timely appeal from that denial" all the way to the highest state court. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

The limitations period once again began to run on January 21, 2012 and expired 138 days later, or on June 7, 2012. Stovall's federal habeas petition, filed on June 27, 2012, was thus filed too late to meet the federal deadline.[22] Thus, his federal habeas petition is untimely and should be dismissed as time-barred, unless there is a basis for equitable tolling of the federal statute of limitations.

### C.    Equitable Tolling

The Supreme Court has affirmed that the AEDPA "statute of limitations defense . . . is not jurisdictional." *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560 (2010). As such, the federal statute of limitations is customarily subject to equitable tolling. *Id.* "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Rivera v. Quarterman*, 505 F.3d 349, 353 (5th Cir. 2007), citing *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998).

The *Holland* court adopted the established standard for determining whether equitable tolling applies: "[T]hat a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland,* at 2563 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

---

[22]Even if the court considered the June 18, 2012 date when Stovall signed and dated his pauper application to be the federal "filing date", the application would still be untimely as it should have been filed by no later than June 7, 2012 to meet the deadline.

*See also Davis*, 158 F.3d at  810.  "'Equitable  tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996).  What constitutes an "extraordinary circumstance" necessarily involves a "fact-intensive" inquiry.  *Holland*, 130 S.Ct. at 2564-65. "In order for equitable tolling to apply, the applicant must diligently pursue his §2254 relief." *Id.* Moreover, the petitioner bears the burden of establishing entitlement to equitable tolling in the AEDPA context.  *Philips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

In this instance, Stovall has made no specific argument in favor of equitable tolling, despite the State's asserted time-bar defense and nothing in the record supports a request for equitable tolling. Stovall's federal habeas application challenging his 2006 armed robbery conviction, therefore, is deemed time-barred from this court's consideration.

Accordingly,

## III.  Recommendation

It is therefore **RECOMMENDED** that Antonio Stovall's Petition for Issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions  accepted  by  the  district

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[23]

New Orleans, Louisiana, this 24th day of September, 2013.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[23]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.